FILED

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

98 JUN 30 PM 4: 28

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **ALVIN UNDERWOOD,** | ] |
| Plaintiff(s), | ] |
| vs. | ]  CV 97-N-860-W |
| **LIFE INSURANCE COMPANY OF GEORGIA, et al.,** | ] |
| Defendant(s). | ] |

**Memorandum of Opinion**

ENTERED
JUN 3 0 1998

## I. Introduction.

The plaintiff, Alvin Underwood ("Underwood"), originally filed this insurance fraud action against Life Insurance Company of Georgia ("Life of Georgia") in the Circuit Court of Greene County, Alabama, on or about February 28, 1997. Underwood asserted claims, pursuant to the laws of the State of Alabama, for misrepresentation, fraudulent suppression, fraud by mistake, negligent supervision, and wanton supervision. *Complaint*, ¶¶13-30. On April 8, 1997, defendants timely removed the case to this court based upon diversity jurisdiction. *See Petition for Removal* at 1.

The matter is presently before the court on the defendants' motion for summary judgment, filed February 20, 1998. The parties have fully briefed the motion, have submitted documentary evidence, and have presented oral argument at a hearing held on June 29, 1998. The motion is ripe for decision, and upon due consideration, will be granted.

## II.  Statement of Facts.[1]

Plaintiff Underwood, who is educated through the twelfth grade, purchased a flexible premium adjustable life insurance policy in the amount of $28,155 from Life of Georgia through its agent, Robert Dollar, on or about September 13, 1991. As its name indicates, the policy Mr. Underwood purchased was designed to have a flexible premium which could increase or decrease, depending upon the interest rate, the cost of insurance, and the length of the insured's life. The planned premium at the time the policy was issued was $7 per week.

Mr. Underwood received a copy of his policy and annual statements on the policy thereafter, which he "glanced through" and kept in his possession. However, Mr. Underwood did not specifically "read" the policy or the annual statements. Mr. Underwood alleges that Life of Georgia agent Robert Dollar told him that his premium would never increase, but would instead remain $7 per week. In fact, Mr. Underwood's policy premium has not increased, but has remained $7 per week.[2] Life of Georgia has

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] The plaintiff, in his responsive submission, disputes this fact and cites for the Court a document purportedly outlining the value projection of Mr. Underwood's life insurance policy, which was never sent to policyholders, *see Plaintiff's Exhibit 2*, and the affidavit of Auburn University at Montgomery Professor David R. Lange. *See Plaintiff's Exhibit 15*. However, the cited evidence in no way contravenes the defendant's characterization of the evidence. Moreover, the plaintiff admitted in deposition that the policy premiums have never increased and that he has paid no more than the originally agreed upon $7 per week: At pages 21 and 22 of the plaintiff's deposition, the following discourse takes place:

Q. And the only thing you remember him telling you at that time was about this policy paying you fifteen thousand dollars at your retirement?
A. Yes, sir. And about the seven dollars I had to pay. It was seven dollars – I'm trying to figure this out. Seven dollars per week coming out of my paycheck. And just seven dollars, was supposed to stay seven dollars all the time. The premium never was supposed to have went up.

- 2 -

never given Mr. Underwood any indication that his policy premiums would ever increase.[3] The only reason Mr. Underwood has to believe that his premium would ever increase is that his attorney told him that the premium will "probably" increase.[4] It is undisputed that Mr. Dollar does not recall whether he explained to Mr. Underwood that his premium would

---

> Q. Now you remember that he told you that?
> A. Yeah. I remember that now. . . .
> Q. So he told you the seven dollars was going to come out of payroll deduction?
> A. Right.
> Q. Said that was going to come out of your pay. It was going to be seven dollars what?
> A. Weekly.
> Q. A week. And it was going to stay that way; is that right?
> A. Yeah.
> Q. Has it stayed that way?
> A. Yeah.
> Q. What he told you was the truth, wasn't it?
> A. Yes, sir.

*Defendants' Exhibit 2*, at 21-22.

[3] Again, the plaintiff disputes this fact. However, as is the case most of the time when the plaintiff disputes the defendants' proposed undisputed facts, the cited evidence does not support his disputation. Citing once again a document purportedly outlining the value projection of Mr. Underwood's life insurance policy, *see Plaintiff's Exhibit 2*, and the affidavit of Auburn University at Montgomery Professor David R. Lange, *see Plaintiff's Exhibit 15*, the plaintiff contends simply that "Plaintiff's policy premium had been increased by Life of Georgia." *Opponent's Amended Responsive Statement of Facts in Response to Exhibit D of the Court's Order*, at No. 8. Yet, this evidence fails to refute the defendants' characterization of this fact. Dr. Lange's affidavit, for example, speaks only in hypotheticals that do not touch on the defendant's factual contention: "*If* Mr. Underwood is required to pay $744.00 per year in premium payments, he will have an outlay of premium payments in the amount of $40,462.00 over the life of the policy," *Plaintiff's Exhibit 15*, at 2; and, based upon these hypothetical payments, "discounted back to the present value," . . . "Mr. Underwood has suffered damages of $8,055.75," *id.*, despite the undisputed fact that Mr. Underwood has been required to pay no more than $364.00 per year and has actually paid no more than $364.00 per year. *See Defendants' Exhibit 2*, at 21-22.

[4] The plaintiff testified in deposition:
Q. Has anyone with Life of Georgia told you that your premiums were going to go up?
A. No.
. . . .
Q. Are you dissatisfied with your policy in any way?
A. Yes, sir.
Q. How is that?
A. Because it's [sic] fraud there.
Q. How? How is it fraud?
A. Well, one day my policy is going to – the premium is going to change. Right?
Q. Who told you that?
A. That's what my lawyer says.
*Defendants' Exhibit 2*, at 23, 36-37.

- 3 -

change in the future.

When Mr. Underwood first perceived that there was a problem with his insurance policy, he did not contact Life of Georgia, but instead filed a civil complaint through his attorney against Life of Georgia, which was the first notice that Life of Georgia received that Mr. Underwood was unhappy with his insurance policy. Upon learning of Mr. Underwood's contentions, Life of Georgia wrote a letter to Mr. Underwood assuring him that, assuming he makes no withdrawals from the policy, takes out no loans against the policy, and keeps making his current premium payments, his premium will never increase and the policy will endow at age 95.

## III.   Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.    Discussion.

### A.    Plaintiff's Standing to Bring Suit.

The Supreme Court has said that the core of Article III's requirement for cases and controversies is found in the rule that standing is limited to those who allege that they

personally have suffered or imminently will suffer an injury. The Court explains, "[t]he plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (citations omitted); *see also Lujan v. Defender of Wildlife*, 504 U.S. 555, 560 (1992) ("[B]y [injury in fact] we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.")

Requiring an injury is a key to assuring that there is an actual dispute between adverse litigants and that the court is not being asked for an advisory opinion. The judicial role in the system of separation of powers is to prevent or redress particular injuries. *See Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471 (1982). In other words, judicial resources are best saved for halting or remedying actual, concrete injuries.

In this vein, it is axiomatic that a plaintiff cannot bring a cause of action unless and until all of the elements of the cause of action are present, or a cause of action "accrues." *Smith v. Medtronics, Inc.*, 607 So. 2d 156, 159 (Ala. 1992). This principle is well settled and is true whether the claim arises in tort or contract. *See City of Birmingham v. Cochrane Roofing & Metal Co.*, 547 So. 2d 1159 (Ala. 1989). Thus, under Alabama law, fraud without damage cannot be the basis of an action at law, as proof of actual damage is an essential

element of fraud.[5] *See Boswell v. Liberty National Life Ins. Co.*, 643 So. 2d 580, 581 (Ala. 1994).

Specifically, a plaintiff must establish the following elements to support a claim of fraudulent misrepresentation: (1) a *false* representation (2) of material *existing fact*; (3) relied upon by the plaintiff (4) proximately resulting in *actual damage* to the plaintiff. *See Boswell*, 643 So. 2d at 581; *Russellville Production Credit Association v. Frost*, 484 So. 2d 1084, 1085-86 (Ala. 1986). Similarly, to prevail on a suppression claim, a plaintiff must prove: (1) concealment or nondisclosure of material facts by the defendant, (2) under a duty to communicate such facts, (3) to the inducement of the plaintiff to act, (4) proximately resulting in *actual injury* to the plaintiff. *See Boswell*, 643 So. 2d at 581; *Cornelius v. Austin*, 542 So. 2d 1220, 1223 (Ala. 1989).

The defendant contends that Mr. Underwood's claims are not ripe and that no cause of action has accrued, because Mr. Underwood cannot demonstrate, *inter alia*: (1) the falsity of any alleged representation or (2) any actual damage, until and unless the contract, at some future time, fails to conform with the alleged representations. *See Movant's Initial Submission in Response to Exhibit D of the Court's Order*, at 7. The Court agrees.

The evidence indicates that the insurance contract at issue is executory and, to date, Mr. Underwood has not been required to pay any additional premium to maintain the policy in full force and effect, other than the regular $7 weekly premium. Thus, the policy has remained in full conformity with the alleged representations, and no cause of action for

---

[5] Likewise, claims of negligence or wantonness require, *inter alia*, proof of actual damage. *See, e.g., Rutley v. Country Skillet Poultry Co.*, 549 So. 2d 82, 85 (Ala. 1989).

- 8 -

ordinary fraud has accrued.

Therefore, the Court agrees with the defendant that the issue in this case is not whether the policy is valid and has performed to date in conformity with the alleged representations, but whether the policy will continue to so perform over the life of the policy (*i.e.*, whether Life of Georgia will continue to perform in the future on promises implicit in the alleged representations).[6] The bare allegations that Mr. Underwood believes Life of Georgia might not or will not honor its alleged representations is simply not enough to support a cause of action for fraud. As long as Mr. Underwood continues to make his $7 weekly premium payments and the policy continues to provide a death benefit of $28,155, the alleged representations are not false and Mr. Underwood has suffered no damage under Alabama law.

Mr. Underwood specifically alleges that he has been damaged as follows: "[He] has made payments on a policy that was not as promised; he lost the value of the payments; he lost interest on the payments; he does not have the policy that was promised to him; he will be required to increase his premium payments in the future or lose his insurance policy; he suffered mental anguish and emotional distress and will continue to

---

[6] Accordingly, to the extent Plaintiff sets forth a claim for fraud, plaintiff's claim is actually for "promissory" fraud. *See Russellville Production Credit Association*, 484 So. 2d at 1085-86 ("If the fraud is based upon a promise to perform in the future, two additional elements must be proved: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive"). However, here plaintiff cannot even establish the prima facie elements of ordinary fraud, which are also prerequisite elements of promissory fraud. *See id.* Hence, a cause of action for promissory fraud does not lie until and unless the contract, at some future time, fails to conform with the alleged promises, for example, unless and until the promise becomes false and the plaintiff suffers actual injury. Though Mr. Underwood relies upon the affidavit testimony of one Dr. David Lange to establish that he suffers present injury, Mr. Lange's testimony is couched merely in hypotheticals: "*If* Mr. Underwood is required to pay $744.00 per year in premium payments," then he will pay more than he was told he would pay when he purchased the policy. *See Plaintiff's Exhibit 15*, at 2 (emphasis added).

do so; and he has been otherwise injured and damaged." *Complaint*, ¶ 17. All damages Mr. Underwood claims are necessarily based on his policy not being "as promised." However, the policy has been and remains precisely as allegedly promised. Mr. Underwood alleges he was promised "that the weekly premiums would be $7 for the life of the policy and as long as he paid his weekly premiums of $7, he would have a death benefit in the amount of at least $28,155." *Complaint*, ¶ 14. It is undisputed that, to date, weekly premiums have remained at $7 and that the death benefit has been at least $28,155. *See Defendants' Exhibit 2*, at 22, 28.

As a result, the Court concludes that Mr. Underwood has received from Life of Georgia exactly what he paid for and he cannot establish any present actual damage. Rather, Mr. Underwood offers blanket allegations of mental anguish, emotional distress, and that "he has been otherwise injured and damaged," which are necessarily based not on any past or present actual damage suffered by him, but on his speculative fear that at some future time his policy may fail to perform as allegedly promised. Such speculative fear of future failure, however, is not a legal injury sufficient to support a claim under Alabama law. *See, e.g., Pfizer, Inc. v. Farsian*, 682 So. 2d 405 (Ala. 1996); *cf. Solomon v. The Guardian Life Ins. Co. of Am.*, No. 96-1597, 1997 WL 611586, at *4 & n.5 (E.D. Pa. Sept. 26, 1997) (in "vanishing premium" case, court found that the premium might "vanish" after eight to ten years, but that such a conclusion was purely speculative and, as a result, "the law requires a finding that [the plaintiff's] current claims of harm and damages are premature").

Though certainly not binding on this court, a fairly recent opinion from the Circuit

Court of Mobile County, Alabama, *Nunnery v. The Prudential Insurance Company of America*, No. CV-96-4048 (Mobile Co. Cir. Ct., March 1, 1997) (McRae, J.) (slip op.), is helpful to an analysis of the plaintiff's claims. In *Nunnery*, the plaintiff filed an action against his life insurer claiming that their agent told him, at the time he bought two policies in 1992 and 1993, that no premiums would be required on the policies after ten years. *See Nunnery*, at 1. However, at the time of the lawsuit, the ten year periods had not expired. *See Nunnery*, at 2. Therefore, the plaintiff had not sustained any damages and could not maintain an action at that time. *See Nunnery*, at 4.

Similarly, Mr. Underwood in the present case claims that, contrary to representations made to him when he bought the policy, his insurance premium will one day increase. However, he concedes that his premium has not increased to date. Thus, like the plaintiff in *Nunnery*, Mr. Underwood has sustained no damage and cannot maintain a cause of action here.

The court in *Nunnery* relied partially upon the Alabama Supreme Court's ruling in *Pfizer*. In *Pfizer*, the plaintiff alleged mental anguish and emotional distress as a result of learning of alleged fraud involving the potential future failure of a heart valve to perform properly, even though the heart valve had not yet failed. The Alabama Supreme Court found that "under Alabama law *[plaintiff's]'s fear* that [the product] could fail in the future *is not, without more, a legal injury sufficient to support his claim. . . . [his] concern* that [the product], which is presently functioning normally, could later malfunction *is not an injury recognized by Alabama law.*" *Pfizer*, 682 So. 2d at 408 (emphasis added). The court concluded that the plaintiff could not maintain a fraud claim under Alabama law because

the valve had not failed. *See id.* ("Although the parties see different theories of this case--[the plaintiff] relying upon Alabama fraud law, while [defendant] argues in the context of product liability law--we conclude that the answer must be . . . whether it is couched in terms of fraud law or in terms of product liability law, must be that [the plaintiff] does not now have a cause of action for damages, because the valve has not failed").

Moreover, Mr. Underwood's allegation of damage by way of his payment of premiums is illusory and does not constitute a legal injury because such payment purchased exactly the coverage he sought. In *Boswell v. Liberty National Life Ins. Co.*, 643 So. 2d 580 (Ala. 1994), the Alabama Supreme Court specifically addressed the element of actual injury in the form of payment of premiums. The plaintiffs in *Boswell* alleged that they were induced to part with their money in purchasing new cancer coverage policies to replace their old cancer policies, that they allowed their old policies to lapse under a promise by defendants that the new policy would offer all the same coverage plus additional benefits, and that the new policy cost more, while actually offering less coverage. The Court held that these allegations amounted to injury or damage sufficient to withstand dismissal. The Court concluded:

> "the payment of *additional* premiums on the *unnecessary* new policy was an injury - damage - to the plaintiffs, . . .
>
> . . . The exchange of the policies is the fraudulent act complained of, but it is not, in and of itself, the injury or damage. *The injury or damage [is] that the plaintiffs were persuaded . . . to pay for something they did not receive. In other words, the [injury or damage] was the payment of greater premiums that were unnecessary because the plaintiffs received no additional coverage in return for the greater premiums and lost benefits they already enjoyed under the old policy.*"

*Id.* at 581-582 (emphasis added).

- 12 -

The court in *Boswell* thoroughly analyzed Alabama law concerning the question of whether payment of premiums might constitute a legal injury. The court discussed two lines of Alabama cases on the subject, one of which stood for the proposition that payment of premiums alone was not sufficient to constitute legal injury, the second of which held that payment of *unnecessary* premiums was sufficient to constitute legal injury.[7] The court overruled the first line of cases *only to the extent that they were inconsistent with the principle that the payment of unnecessary premiums was sufficient to constitute injury.* See id. As a result, far from abrogating the well-settled rule that fraud without actual damage is not actionable, the *Boswell* court merely recognized that a plaintiff may demonstrate legal injury if he can show that he paid for something he did not receive (*i.e.*, payment of additional or unnecessary premiums for coverage that was not provided or was less than represented). Here, however, Mr. Underwood can make no such showing because he has never been asked or required to pay additional premiums and has received precisely the coverage he was supposed to receive.

Thus, in the present case, as in *Pfizer* and as contemplated in *Boswell* and the caselaw discussed therein, Mr. Underwood's alleged damages are in substance based on purely speculative fear that the policy *may* in the future fail to perform as allegedly promised. Such fear is not, without more, a legal injury recognized under Alabama law.

---

[7] In those cases discussed in *Boswell* involving a question of whether payment of premiums is sufficient damage to support a cause of action for fraud, the past or present validity, premium amounts, and/or coverages of the policies themselves was in question. In the present case, and despite the plaintiff's mischaracterizations to the contrary, the issue is not whether the policy itself is valid or whether premiums and coverages have been as promised to date, but whether the alleged representation that for weekly premiums of $7 Mr. Underwood would receive death benefit coverage of at least $28,155 for the life of the policy creates a fraud claim that is currently actionable.

*See Benson v. Life Ins. Co. of Georgia*, No. CV-97-22, slip op. at 2 (Lowndes Co. Cir. Ct. June 25, 1998) (McFerrin, J.) ("Only when, and if, the oral representation actually proves false will the Plaintiff have suffered damages); *cf. Lujan v. Defender of Wildlife*, 504 U.S. 555, 560 (1992) ("[B]y [injury in fact] we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."). Mr. Underwood's payment of premiums on the policy is not a concrete injury because, to date, he has received precisely what he paid for and has not paid unnecessary premiums, as interpreted by the Alabama Supreme Court in *Boswell*. Accordingly, the Court finds that Mr. Underwood fails to establish actual legal injury or damage sufficient to maintain any cause of action against the defendants, and summary judgment will be granted on all of Mr. Underwood's claims.

**V.    Conclusion.**

Accordingly, the defendants' motion for summary judgment will be granted. The Court will enter an appropriate order in conformity with this opinion.

Done, this 30th of June, 1998.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE